## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

EYVETTE MARIE HARRIS,                  *

Plaintiff,                             *

v.                                     *          Civil Action  MJM-21-1242

CHARLES E. SMITH LIFE                  *
COMMUNITIES, *et al.*,
                                       *
Defendants.

           * * * * * * * * * * *

## MEMORANDUM OPINION

Eyvette Harris ("Plaintiff"), proceeding *pro se*, commenced this civil action against Charles E. Smith Life Communities ("CESLC"), Terri Tanner-Hill, and Gregory Jackson (collectively, "Defendants")[1] alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA").[2] Currently pending is Defendants' Motion to Dismiss Plaintiff's Amended Complaint. ECF 22. Plaintiff filed a memorandum in opposition to the motion (ECF 27), and Defendants filed a reply memorandum (ECF 28). The Court has reviewed the filings and finds that no hearing is necessary. Loc. R. 105.6. For the reasons stated below, Defendants' motion will be granted in part and denied in part.

---

[1]     Defendants Terri Tanner-Hill and Gregory Jackson are identified in the pleadings as employees of CESLC. A third individual defendant, Ava Shivers, also identified as a CESLC employee, is named in the original Complaint (ECF 1) but is not named in the Amended Complaint (ECF 18).

[2]     The parties have consented to proceed before a United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF 25; ECF 26).

## I.     Background

CESLC is a senior care provider based in Rockville, Maryland. Plaintiff is a former

employee of CESLC, having been employed with CESLC for at least six years prior to her

resignation. ECF 18 at 2, 5. It appears from the Amended Complaint and materials incorporated

by reference[3] that, in 2020, Plaintiff's position involved performing certain accounting or

bookkeeping services for financial accounts held on behalf of CESLC resident-clients. *Id.* at 3;

---

[3]      When resolving a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts are limited to
considering the allegations set forth in the complaint and documents that are either attached to
the complaint or "explicitly incorporated into the complaint by reference[.]" *Goines v. Valley
Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues &
Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *see also* Fed. R. Civ. P. 10(c). Courts may also consider
documents "attached to the motion to dismiss, so long as they are integral to the complaint and
authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir.
2007) (citation omitted). But "it is axiomatic that the complaint may not be amended by the
briefs in opposition to a motion to dismiss." *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053,
1068 (D. Md. 1991) (citation omitted); *see also, e.g.*, *Glenn v. Wells Fargo Bank, N.A.*, Civ. No.
DKC-15-3058, 2016 WL 3570274, at *3 (D. Md. July 1, 2016) (declining to consider declaration
attached to brief opposing motion to dismiss).

        Here, a compilation of documents attached to the Amended Complaint includes a
Dismissal and Notice of Rights from the U.S. Equal Employment Opportunity Commission
("EEOC"), a CESLC Notice of Disciplinary Action regarding a CESLC employee referenced in
the Amended Complaint, and a memorandum and various emails to which Plaintiff is a party,
some of which are referenced in the Amended Complaint. ECF 18-1. Additionally, Plaintiff has
submitted five exhibits with her response in opposition to Defendants' Motion to Dismiss,
including some of the same documents attached to the Amended Complaint. ECF 27-1. Exhibit 3
includes a letter from Gregory Jackson and Ana Shivers to Plaintiff, dated August 26, 2020, and
entitled "Re: Final Warning," which appears to be the document referenced in the Amended
Complaint as "Disciplinary Action Second and Final Warning Letter." ECF 27-1 at 8–10. The
August 26, 2020, letter is not only referenced in the Amended Complaint but integral to
Plaintiff's allegations that Defendants violated Title VII and ADEA. Defendants have not only
declined to challenge the authenticity of Exhibit 3 but have relied upon it in their reply
memorandum. *See* ECF 28 at 3–4. Therefore, the Court will consider the Amended Complaint,
the materials attached to the Amended Complaint, and the August 26, 2020, letter in Plaintiff's
Exhibit 3. Any other materials included among the exhibits attached to Plaintiff's opposition but
not attached to the Amended Complaint will not be considered at this stage. As required when
assessing a Rule 12(b)(6) motion, the Court assumes that all facts alleged in the Amended
Complaint are true. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).

ECF 27-1 at 8–10. Plaintiff was born in 1966 and identifies herself as Black American. ECF 18 at 3–4.

The Amended Complaint alleges that Plaintiff was subjected to workplace discrimination beginning in May 2017 and retaliation beginning in May 2020. *Id.* at 3. Specifically, Plaintiff alleges that a colleague and co-worker, Tonee' Green, engaged in discrimination and harassment against Plaintiff, which Plaintiff reported to her manager and human resources director at CESLC. *Id.* In an email dated January 24, 2019, to Paula Donnell, Employee Relations Manager, entitled "Verbal Complaint Follow-up – FORMAL COMPLAINT," Plaintiff referenced an incident of "bullying, intimidation, and . . . harassment" by Green in Plaintiff's office on January 18, 2019; a conversation between Plaintiff and Donnell on January 21, 2019, regarding the January 18th incident; stalking by Green on January 22, 2019; a meeting between Plaintiff and Donnell concerning the stalking incident on January 23, 2019; "several complaints by colleagues of the Accounting Department regarding [Green's] bullying and volatile behavior"; Plaintiff's requests "to change her work hours and have security escort to her car" due to Green's behavior; Green's creation of "a hostile, pervasive and unsafe work environment fueled with negative behavior with no accountability"; and management's "fail[ure] to take action" in response to reports about Green's conduct, which "resulted in her becoming more aggressive and dangerous." ECF 18-1 at 3. Plaintiff warned that she would "take legal action" "[i]f this situation continue[d.]" *Id.*

After Plaintiff submitted the internal complaint, she did not receive "reprieve from the [d]iscrimination and [h]arassment [she] was continuing to experience." ECF 18 at 4. She subsequently filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC"), on April 14, 2020. *Id.* at 3–5.

Also on April 14, 2020, in reply to an allegedly harassing email from Green, Plaintiff wrote, "You seem to think that every time I am trying to resolve an issue with a family member [of a resident] you have to get involved. I do not work or report to you, let's be clear." ECF 18 at 4; ECF 18-1 at 7. Plaintiff alleges that Green reported this interaction to her manager, who was close with Terri Tanner-Hill, Senior Vice President of Finance and Chief Financial Officer for CESLC. ECF 18 at 4. Also on April 14, 2020, Gregory Jackson, Plaintiff's manager, had a conversation with Plaintiff about her email to Green of that date. ECF 18-1 at 9.

According to the Amended Complaint, Tanner-Hill "instructed" Jackson "to retaliate on [Plaintiff] after [Tanner-Hill] found out that [Plaintiff] filed a complaint with the EEOC office in April 2020." *Id.* at 3.

In May 2020, Plaintiff was asked to attend a meeting with Jackson, Shivers and Donnell "in which … [she] was demanded to sign a Disciplinary Action – First and Final Warning Letter to maintain [her] employment" with CESLC (the "First Warning Letter"). ECF 18 at 4. Dated May 27, 2020, the First Warning Letter characterized Plaintiff's April 14th email as "curt and discourteous" and her behavior as "unacceptable" and not to be tolerated. ECF 27-1 at 7. The letter stated that Plaintiff's April 14th email and recent interactions with others had not demonstrated the expectation that "team members work together professionally and collegially" and noted "the expectation that [her] interactions with colleagues (written or in person) immediately improve and be sustained at a professional level." *Id.* Finally, the letter stated, "This is a first and final written warning and additional violation of CESLC policies or standards will result in further disciplinary action, up to and including termination." *Id*.

The Amended Complaint alleges that, in June 2020, Plaintiff had "an encounter with Tonee Green in the elevator . . . in which [Plaintiff] was discriminated against and verbally disrespected"

by Green. ECF 18 at 4. Plaintiff sought help from Brenda Rice, CESLC's Vice President of Operations, "as it was apparent" that Jackson "was not planning to do anything to assist in resolving this matter." *Id*.

In August 2020, Jackson asked Plaintiff to attend a second meeting, where Plaintiff was provided a Disciplinary Action – Second and Final Warning Letter (the "Second Warning Letter"). *Id*. The Second Warning Letter, dated August 26, 2020, and signed by Jackson and Shivers, first addressed issues concerning Plaintiff's work performance. ECF 27-1 at 8–9. The letter summarized five recent incidents that caused management's concern: (1) Plaintiff's delay in distributing funds from a Resident Fund Management Services ("RFMS") account to a resident's spouse between April and June 2020; (2) Plaintiff's failure to respond to phone calls from a resident's daughter, placed in an effort to close the resident's RFMS account; (3) Plaintiff's failure to identify a six-month delay in the transfer of funds from a resident's account to CESLC; (4) Plaintiff's failure to report a problem that occurred when a resident and a social worker attempted to deposit cash to an RFMS account, and failure to notify management of the issue; and (5) Plaintiff's failure to release funds from a resident's account for impending funeral costs upon request from the resident's power of attorney, before the resident's passing.

The Second Warning Letter further stated that the foregoing incidents "reflect a lack of attentiveness, initiative, commitment, and customer service[,]" and could have exposed CESLC to legal claims and affected its reputation. *Id*. The letter noted that CESLC considered terminating Plaintiff's employment but decided to issue this "final warning" based upon the length of Plaintiff's employment with the company. *Id*. The letter also stated management's expectation that Plaintiff's performance would "improve immediately" and warning that Plaintiff would be terminated if work performance issues continued. *Id*.

Next, the Second Warning Letter addressed the impact of the continued closure of CESLC's resident banking offices due to COVID-19 and offered two options for the time Plaintiff previously spent on her banking office duties. Based on an estimation that Plaintiff had spent 25% of her time at the banking offices before they were closed in March 2020, CESLC would require Plaintiff to "take on other duties one day a week," which would be 20% of her time. ECF 27-1 at 9. Plaintiff's first option was that she could "provide administrative support in the resident accounting area," to include certain clerical duties, such as "setting up new files, file turnover and cleanup, and updating files[,]" as well as "assist[ing] in the collection of resident account balances," and "other duties as assigned." *Id*. at 9–10. Alternatively, Plaintiff could "assist with the registration of employees for COVID-19 testing" and, possibly, with taking the temperature of employees and visitors at the front door and ensuring the completion of healthcare screening questionnaires. *Id*. at 10.

Plaintiff was ultimately assigned the former option but considered it a demotion to the position of "File Clerk once a week." ECF 18 at 4. She alleges that Tanner-Hill and Jackson "decided to demote [her] in August 2020 from Resident Fund Accountant/Bookkeeper to File Clerk." *Id*. at 3. She further alleges that Jackson and other employees would laugh at Plaintiff and make jokes at her expense regarding her weekly filing duties. *Id*. at 4. Plaintiff found such treatment hurtful and stressful, and it "began to wear on [her] health." *Id.* Specifically, she suffered lack of sleep and disconnection from family due to humiliation and emotional distress, tingling in her arm, and heart palpitations, and she notes that she began to see a psychiatrist. *Id*. The Amended Complaint further alleges that, "[b]ase[d] on [her] physician's recommendation and [her] own

well-being," Plaintiff "had to leave [her] job" at CESLC and "start [her] career over at the age of fifty-five." ECF 18 at 5.[4] Plaintiff couches her departure as a constructive discharge. *Id*.

On March 1, 2021, Plaintiff received a Notice of Right to Sue Letter from EEOC, dated February 24, 2021. ECF 18 at 5. She filed this lawsuit on May 20, 2021. ECF 1. The Amended Complaint was filed on October 28, 2021. ECF 18.

## II.     Legal Standard

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). A motion to dismiss under Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint need not include "detailed factual allegations" to satisfy Rule 8(a)(2), but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect

---

[4] The date of Plaintiff's resignation is unclear, and the Amended Complaint lacks allegations concerning the specific circumstances under which she resigned.

7

statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks, brackets, and citation omitted). A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level[,]" *id.*, and "tender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice, *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

The purpose of a Rule 12(b)(6) motion is to "test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999)). Thus, when considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Id.* at 212. At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" the defendant's liability for the alleged wrong and the plaintiff's entitlement to the remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Notably, "[f]ederal courts are obliged to liberally construe filings by *pro se* litigants." *United States v. Brown*, 797 F. App'x 85, 89 (4th Cir. 2019) (citing *Haines v. Kerner*, 404 U.S.

519, 510 (1972)). A *pro se* litigant's pleadings are held to "less stringent standards than formal pleadings drafted by lawyers[.]" *Haines*, 404 U.S. at 520–21.

## III.   <u>Analysis</u>

### A. Discrimination and Retaliation Under Title VII and ADEA

Title VII and ADEA make it unlawful for an employer to discriminate against an individual with respect to employment based upon the individual's race or age, respectively, or to retaliate against an individual for engaging in activity protected by Title VII or ADEA. *See* 42 U.S.C. § 2000e–2(a)(1) (Title VII anti-discrimination provision); 29 U.S.C. § 623(a) (ADEA anti-discrimination provision); 42 U.S.C. § 2000e–3(a) (Title VII anti-retaliation provision); 29 U.S.C. § 623(d) (ADEA anti-retaliation provision).

At trial in an employment discrimination and retaliation case, the plaintiff bears the burden of proving her claims through one of two methods. The plaintiff may offer "direct or indirect" evidence of discrimination or retaliation under "ordinary principles of proof[,]" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997), or follow the burden-shifting framework articulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973). *See also Smith v. CSRA*, 12 F.4th 396, 416 (4th Cir. 2021). While the Court may consider these two methods of proving discrimination when evaluating a plaintiff's allegations on a Rule 12(b)(6) motion to dismiss, the plaintiff need not commit to either of the two approaches at the motion-to-dismiss stage. *Chen v. Md. Dep't of Health & Mental Hygiene*, Civ. No. ELH-15-1796, 2016 WL 4539204, at *17 (D. Md. Aug. 29, 2016).

Under the *McDonnell Douglas* framework, at trial, the plaintiff must first establish a *prima facie* case of discrimination or retaliation. *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d

9

289, 294 (4th Cir. 2010); *see also Abilt v. Central Intelligence Agency*, 848 F.3d 305, 315 (4th Cir.

2017). Although the precise formulation of the required *prima facie* showing will vary in "different

factual situations," *McDonnell Douglas*, 411 U.S. at 802 n.13, the plaintiff is generally required to

show that the employer took adverse action against a plaintiff "under circumstances which give

rise to an inference of unlawful discrimination[,]" *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S.

248, 253 (1981).

To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show (1)

membership in a protected class; (2) an adverse employment action by the employer; (3)

satisfactory job performance at the time of the adverse employment action; and (4) that the adverse

employment action occurred "under circumstances giving rise to an inference of unlawful

discrimination." *Jones v. Constellation Energy Projects & Servs. Grp., Inc.*, 629 F. App'x 466,

468 (4th Cir. 2015) (quoting *Adams v. Tr. of Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th

Cir. 2011)). The fourth element is met if "similarly-situated employees outside the protected class

received more favorable treatment." *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir.

2004).

Similarly, to establish a *prima facie* claim of discrimination under the ADEA, a plaintiff

must show (1) age of at least 40 years; (2) an adverse employment action by the employer; (3)

satisfactory job performance at the time of the adverse employment action; and (4) that she was

replaced by "a substantially younger individual with comparable qualifications." *Westmoreland v.

TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019). Unlike Title VII, the ADEA does not permit

"a mixed-motives age discrimination claim." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175

(2009). Thus, the plaintiff must "establish that age was the 'but-for' cause of the employer's

adverse action." *Id.* at 177; *see also Hartman v. Univ. of Maryland at Baltimore*, 595 F. App'x

179, 180–81 (4th Cir. 2014).

To establish a *prima facie* case of retaliation under Title VII or ADEA, "a plaintiff must show that (1) the plaintiff engaged in a protected activity, such as filing of a complaint with the EEOC; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action." *Okoli v. City of Baltimore*, 648 F.3d 216, 223 (4th Cir. 2011) (citation omitted); *see also Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012); *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (en banc).

If a plaintiff establishes a *prima facie* case, a presumption of illegal discrimination or retaliation arises, and the burden of production shifts to the employer to state a legitimate, non-discriminatory reason for its adverse action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011); *see also Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000). "If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted." *Burdine*, 450 U.S. at 255. To prevail, the plaintiff must then prove, by a preponderance of evidence, "that the [employer's] proffered reason was not the true reason for the employment decision" and that the plaintiff "has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256; *see also Reeves*, 530 U.S. at 143; *Adams*, 640 F.3d at 560.

Courts have applied the *McDonnell Douglas* framework to both Title VII and ADEA claims, for both employment discrimination and retaliation. *See, e.g.*, *Mereish v. Walker*, 359 F.3d 330, 334–35 (4th Cir. 2004) (ADEA discrimination); *Laber*, 438 F.3d at 432 (ADEA retaliation); *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318–20 (4th Cir. 2005) (Title VII discrimination); *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015) (Title VII retaliation). It is important to note, however, that the *McDonnell Douglas* proof scheme is "a

11

procedural device, designed only to establish an order of proof and production." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993). As the Supreme Court explained in *Swierkiewicz v. Sorema*, the "*prima facie* case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." 534 U.S. 506, 510 (2002). At the motion-to-dismiss stage, a plaintiff need not establish a *prima facie* case of discrimination or retaliation under *McDonell Douglas* but must satisfy the pleading standard established in *Iqbal* and *Twombly*. *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017); *see also Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for all civil actions, . . . and it applies to antitrust and discrimination suits alike[.]") (citations omitted). Thus, while a plaintiff does not necessarily need to allege facts sufficient to establish all elements of a *prima facie* case of employment discrimination or retaliation to avoid dismissal under Rule (12)(b)(6), sufficient facts must be pleaded to support a reasonable inference that an adverse employment action was motivated by unlawful discrimination or retaliation. *See McCleary–Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584–86 (4th Cir. 2015).

### B. Claims Against the Individual Defendants

Although Title VII and ADEA claims may proceed against an employer, the Fourth Circuit has found that employees, even those in managerial or supervisory positions, cannot be held personally liable under Title VII or ADEA. *See Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 178 (4th Cir. 1998) (Title VII); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510–11 (4th Cir. 1994) (ADEA). Because neither Title VII nor ADEA provides a cause of action against Terri Tanner-Hill and Gregory Jackson, the claims against these two individual defendants will be dismissed with prejudice.

Plaintiff's Title VII and ADEA claims may proceed against her employer, CESLC, if her pleading suffices to state claims of unlawful race- and age-based employment discrimination or retaliation that are facially plausible. *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 663.

### C. Discrimination Claims Against CESLC

Defendants argue that the Amended Complaint fails to set forth any plausible claim of discrimination under either Title VII or ADEA. The Court agrees, for the following reasons.

#### 1. Lack of Any Discriminatory Bias or Animus

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age"; or "to limit, segregate, or classify . . . employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age[.]" 29 U.S.C. § 623(a)(1), (2).

The Amended Complaint does not allege any facts to show, or to support a reasonable inference of, any bias or discriminatory animus against Plaintiff based on her race or age. Plaintiff states that she is Black American and was born in 1966, but she does not allege any specific facts that demonstrate—or even suggest—that any actions taken against her by CESLC or any CESLC employees were motivated by her race or age. For example, Plaintiff does not allege that CESLC took actions against her that similarly situated employees of other races or of lesser age did not receive, notwithstanding satisfactory job performance by Plaintiff. *See, e.g.*, *White*, 375 F.3d at

295 (in the absence of direct evidence, elements of *prima facie* case of racial employment discrimination include membership in a protected class, satisfactory job performance, adverse employment action, and "that similarly-situated employees outside the protected class received more favorable treatment"). To the contrary, the First Warning Letter cites unprofessional and discourteous conduct by Plaintiff in violation of CESLC policies and standards, and the Second Warning Letter cites several deficiencies in Plaintiff's work performance, as reasons for the reprimands conveyed in each of those letters. Plaintiff's claims for discrimination under Title VII and the ADEA are subject to dismissal for the foregoing reasons alone.

### 2.  Lack of Any Adverse Employment Action

To state a plausible claim of discrimination under Title VII or ADEA, Plaintiff must allege an action by her employer that "adversely affect[ed] the terms, conditions, or benefits of [her] employment." *Holland v. Wash. Homes, Inc*., 487 F.3d 208, 219 (4th Cir. 2007) (internal quotation marks and citation omitted), *quoted in Dones v. Donahoe*, 987 F. Supp. 2d 659, 668 (D. Md. 2013), *and Chang Lim v. Azar*, 310 F. Supp. 3d 588, 601 (D. Md. 2018); *see also* 42 U.S.C. § 2000e–2(a)(1) (Title VII); 29 U.S.C. § 623(a)(1) (ADEA). Such an adverse action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). In most cases, it "inflicts direct economic harm." *Ellerth*, 524 U.S. at 762. The alleged adverse action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Harris v. Gen. Motors Powertrain*, 166 F.3d 1209 (4th Cir. 1999) (per curiam) (quoting *Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir. 1993)).

Employment actions such as "discharge, demotion, decrease in pay or benefits, loss of job, title or supervisory responsibility, or reduced opportunities for promotion" are typically found to be an adverse action. *Boone v. Goldin*, 178 F.3d 253, 255–56 (4th Cir. 1999), *abrogated on other grounds by Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2008) (citing *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981) (en banc)). However, harsh criticism, teasing, humiliation, yelling, bullying, and refusing to address employment-related complaints generally do not rise to the level of an adverse employment action. *See*, *e.g.*, *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 243 (4th Cir. 1997) (manager yelling at plaintiff during meeting, directing other employees to ignore plaintiff and to spy on her, and refusing to act upon, or to communicate with plaintiff about, employment-related complaints "do[] not rise to the level of an adverse employment action for Title VII purposes"); *Booth v. County Exec.*, 186 F. Supp. 3d 479, 485 (D. Md. 2016) (plaintiff's claims that his supervisor "humiliated him in two meetings, made jokes about him, and isolated him from other employees, while alleging mean-spirited behavior, do not assert an adverse employment action"); *Blount v. Dep't of Health and Human Services*, 400 F. Supp. 2d 838, 842 (D. Md. 2004) ("[D]isparaging remarks made by a supervisor do not state an adverse employment action.").

Likewise, reprimands and poor performance reviews, without more, do not constitute adverse employment actions sufficient to support a claim of employment discrimination. *See*, *e.g.*, *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004) ("[A] poor performance evaluation 'is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment.'") (quoting *Spears v. Missouri Dep't of Corr. & Human Res.*, 210 F.3d 850, 854 (8th Cir. 2000)); *Dortch v. Cellco Partnership*, 770 Fed. App'x 643, 647 (4th Cir. 2019) (per curiam) (reiterating that "a poor

performance evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment.") (citation omitted). "A reprimand, whether oral or written, does not *per se* significantly affect the terms or conditions of employment." *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 330 (D. Md. 2003) (citing *Lewis v. Forest Pharms., Inc*., 217 F. Supp. 2d 638, 648 (D. Md. 2002)). However, "if evidence shows that a reprimand not only bruises an employee's ego or reputation, but also works a real, rather than speculative, employment injury, the reprimand becomes [an adverse] employment action." *Id*.; *see also Finnegan v. Dep't of Pub. Safety & Corr. Servs*., 184 F. Supp. 2d 457, 461 (D. Md. 2002) ("[D]iscipline, without evidence that the verbal reprimands or that a counseling letter could lead to further disciplinary action, such as termination, does not constitute an adverse employment action.").

None of the employer conduct alleged in the instant case constitutes an adverse employment action sufficient to state a plausible claim of discrimination under Title VII or ADEA. On the employment discrimination complaint form filed in this matter, Plaintiff checked the boxes for "Termination of [her] employment" and "Unequal terms and conditions of [her] employment" as "[t]he discriminatory conduct of which [she] complain[s] in this action[.]"[5] ECF 18 at 3. It does not appear from the Amended Complaint or the materials incorporated by reference that Plaintiff's employment was actually terminated. Plaintiff alleges, however, that her treatment by CESLC, culminating in a change of her work duties in or around August 2020, which she considers a demotion, and her subsequent resignation, amounted to a constructive discharge. Construed liberally, "Unequal terms and conditions of [her] employment" may refer to the discrimination and

---

[5]     Plaintiff also checked the box for "Retaliation," which will be discussed separately in Part III. D. below, as it is a separate claim.

harassment Plaintiff claims she endured beginning in May 2017, including incidents with her co-worker, Green, and the alleged failure by management to assist Plaintiff in resolving these issues. Even assuming that all of Plaintiff's allegations are true, none of the alleged actions taken by her employer would constitute an adverse employment action for purposes of a discrimination claim under either Title VII or ADEA. The Court will address these matters in chronological order.

### a. Interpersonal Conflict with Coworker

Plaintiff alleges discrimination, bullying, disrespectful, and volatile behavior by Green, a co-worker at CESLC. Even if the alleged conduct by Green toward Plaintiff could be imputed to CESLC, none of this conduct would constitute an adverse employment action as these incidents are not alleged to have adversely impacted the terms, conditions, or benefits of Plaintiff's employment. Likewise, CESLC management's alleged failure to address to Plaintiff's satisfaction the issues between Plaintiff and Green does not rise to the level of an adverse employment action as it did not affect Plaintiff's employment status. *See Munday*, 126 F.3d at 243; *Booth*, 186 F. Supp. 3d at 485.

### b. Letters of Reprimand

Neither the First Warning Letter nor the Second Warning Letter amounted to an adverse employment action for purposes of a Title VII or ADEA discrimination claim. The First Warning Letter, dated May 27, 2020, is a written reprimand focusing on the fraught communications between Plaintiff and Green. The Second Warning Letter, dated August 26, 2020, is another written reprimand, this time focusing on specific failures by Plaintiff in the performance of her work duties. Each letter warned Plaintiff that further issues would result in termination of her employment or other disciplinary action. ECF 18-1 at 9. But neither letter, on its face, purports to alter or impact the terms, conditions, or benefits of Plaintiff's employment, and the Amended

Complaint does not allege facts to show that either letter had any such impact on Plaintiff's employment status.

### c.  Change in Work Responsibilities

After reprimanding Plaintiff about deficiencies in her work performance, the Second Warning Letter goes on to discuss a change in Plaintiff's work duties as a result of the COVID-19 pandemic. The letter indicates that, due to COVID-19, CESLC closed resident banking offices where Plaintiff had previously spent approximately 25% of her time working. It then describes two sets of new work responsibilities as options for assignment to Plaintiff for one day per week, while the resident banking offices remained closed. One of the options was ultimately assigned to Plaintiff: providing administrative support in the resident accounting area, which involved certain filing duties. In the Amended Complaint, Plaintiff alleges that the new assignment was effectively a demotion "from Resident Fund Accountant/Bookkeeper to File Clerk once a week." ECF 18 at 4.

An actual or *de facto* demotion could certainly constitute an adverse employment action for purposes of an employment discrimination claim if it involves a significantly detrimental change in compensation, benefits, title, prestige, opportunity for promotion, level of responsibility, or terms and conditions of employment. *See, e.g.*, *Nnadozie v. Manorcare Health Servs., LLC*, Civ. No. BPG-15-391, 2019 WL 1239874, at *10 (D. Md. Mar. 15, 2019), *aff'd*, 792 F. App'x 260 (4th Cir. 2019). But the assignment of unappealing new duties, without more, does not constitute an adverse employment action, *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 603 (D. Md. 2011), *aff'd*, 465 F. App'x 274 (4th Cir. 2012) (citing *Holland*, 487 F.3d at 219), especially where, as here, the new duties are assigned simply to fill work time that would otherwise be vacant.

Here, in the Second Warning Letter, Plaintiff was presented with choices about how to fill

18

a small portion of her work time that was previously spent working in offices now closed due to COVID-19. She was ultimately assigned administrative filing work for one day per week. Even if the new work duties would have constituted a less prestigious position than that of a bookkeeper if assigned full time, to be assigned these tasks for one day per week that would have otherwise been spent idly is not a significant decline in the terms, benefits, or conditions of Plaintiff's employment. The change in Plaintiff's work duties was not an adverse employment action.

### d. Constructive Discharge

The Amended Complaint alleges that Plaintiff's resignation amounted to a constructive discharge. ECF 18 at 3. It is well established that constructive discharge is a form of adverse employment action. *See Boone*, 178 F.3d at 255–56. "To establish a constructive discharge, a plaintiff must show 'that [s]he was discriminated against by [her] employer to the point where a reasonable person in [her] position would have felt compelled to resign' and that she actually resigned." *Evans v. Int'l Paper Co*., 936 F.3d 183, 193 (4th Cir. 2019) (quoting *Green v. Brennan*, 578 U.S. 547, 555 (2016)); *see also Chapman v. Oakland Living Ctr., Inc.*, --- F.4th ----, No. 20-2361, 2022 WL 3954456, at *9 (4th Cir. Aug. 30, 2022) (citing *Equal Emp. Opportunity Comm'n v. Consol Energy, Inc.*, 860 F.3d 131, 144 (4th Cir. 2017)) (claim of constructive discharge requires objectively intolerable working conditions). Courts evaluating constructive discharge claims must consider whether a plaintiff's workplace was so intolerable that she was compelled to resign under an objective, "reasonable person" standard. *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006) (citation omitted). The conditions of the plaintiff's work must go "beyond 'ordinary' discrimination." *Evans*, 936 F.3d at 193 (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 147 (2004)).

The intolerability requirement is a "high bar." *U.S. Equal Emp. Opportunity Comm'n v. Greyhound Lines, Inc.*, 554 F. Supp. 3d 739, 753 (D. Md. 2021). It "is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign." *Perkins v. Int'l Paper Co*., 936 F.3d 196, 212 (4th Cir. 2019) (citations omitted). "Instead, intolerability is assessed by the objective standard of whether a reasonable person in the employee's position would have felt *compelled* to resign,' . . . that is, whether he would have had *no choice* but to resign." *Id*. (internal quotation marks and citations omitted). Without more, "mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Heiko*, 434 F.3d at 262 (quoting *James*, 368 F.3d at 378). Allegations such as yelling by supervisors, receiving poor evaluations, being chastised in front of customers, "even if true, do not establish the objectively intolerable working conditions necessary to prove a constructive discharge." *Williams v. Giant Food Inc*., 370 F.3d 423, 434 (4th Cir. 2004).

Courts should consider "the totality of the circumstances" in determining whether a resignation was, in fact, a constructive discharge. *Bodkin v. Town of Strasburg, Va*., 386 F. App'x 411, 413 (4th Cir. 2010). "[T]he frequency of the conditions at issue" is an important consideration when assessing intolerability. *Evans*, 936 F.3d at 193 (citation omitted). "The more continuous the conduct, the more likely it will establish the required intolerability. On the other hand, when the conduct is isolated or infrequent, it is less likely to establish the requisite intolerability." *Id*.

By way of example, in *Lloyd v. Riveredge Operating Co., LLC*, the high bar to relief from constructive discharge was met when a plaintiff alleged, *inter alia*, that she was

> (1) repeatedly pressured [] to quit because she reported sexual harassment; (2) after she reported the harassment, forced her to work alone in a barn, [was]

> yelling at and threatening [] whenever she left the barn; (3) on an almost daily
> basis, belittled, berated, and screamed []in front of coworkers and clients; (4)
> [subject to] degrading, sex-based remarks [], despite her requests to discontinue
> the behavior; and (5) [her] coworkers [were instructed] to find negative
> information about her and to monitor her actions in an effort to manufacture a
> pretext to terminate her. [The plaintiff] was subjected to this treatment constantly
> for a period of approximately five months. Moreover, when she could no longer
> take the abuse and sought to report it, [the defendant] told her that the only
> individual to whom she could report the abuse was her primary abuser…. This
> mistreatment caused [her] to experience physical symptoms, including anxiety
> and sleeplessness.

Civ. No. GLR-20-3162, 2021 WL 2550495, at *5 (D. Md. June 21, 2021). In *Lloyd*, Judge Russell

found that, viewed together, the foregoing allegations "give rise to a plausible [inference] that a

reasonable individual subjected to this treatment over the period of several months could find these

conditions intolerable and feel forced to resign." *Id*.

The instant case is a far cry from cases like *Lloyd*. Although Plaintiff alleges that she

endured discrimination beginning in May 2017, more than three years before her resignation, the

Amended Complaint includes but a small number of interpersonal conflicts involving a co-worker,

Green, which Plaintiff claims that CESLC management failed to address after she raised these

issues. It is alleged that, in the three months between May and August 2020, Plaintiff received two

written reprimands and a change in her work duties for one day per week, and that Plaintiff's

manager and co-workers then teased her about this assignment. The Amended Complaint further

alleges that the treatment Plaintiff received was "so hurtful, stressful and overall began to wear on

[her] health"; that Plaintiff "shut down, did not want to eat, could not sleep, and overall started to

disconnect from [her] family"; and she had "no choice but to take a [c]onstructive [d]ischarge . . .

to maintain [her] health and well-being." ECF 18 at 3, 4.

Considering Plaintiff's alleged working conditions objectively and in their totality, and

setting aside her subjective responses to them, the Court does not find that a reasonable employee

21

working under the conditions of Plaintiff's work, as alleged, would find these conditions intolerable to the point of compelling resignation. As compared to cases like *Lloyd*, the difficulties at work Plaintiff describes in the Amended Complaint were infrequent and non-pervasive, occurred within a limited time frame of a few months, and did not pressure Plaintiff to resign. A reasonable employee in Plaintiff's place could be "expected to remain on the job while seeking redress" for what troubles she encountered. *Evans*, 936 F.3d at 193 (quoting *Suders*, 542 U.S. at 147). Accordingly, Plaintiff has failed to allege facts to support her claim that her resignation constituted constructive discharge for which CESLC is liable as a discriminatory employment action under Title VII or ADEA.

Even if the adjustment in Plaintiff's job duties or any of the other actions by CESLC alleged in the Amended Complaint was significant enough a change in her employment conditions to constitute an adverse employment action, the Amended Complaint, as previously explained, fails to state a plausible claim that any of such action was taken on account of Plaintiff's race or age. Accordingly, Plaintiff's claims for discrimination under Title VII and the ADEA will be dismissed without prejudice.

### D. Retaliation Claims Against CESLC

The Amended Complaint adequately states claims of retaliation under Title VII and ADEA. To state a claim of Title VII or ADEA retaliation, the plaintiff must allege that the defendant employer acted adversely against the plaintiff in reaction to employee activity protected by Title VII or ADEA—that is, that a materially adverse action by the employer shared a causal connection with the protected activity. *Coleman v*, 626 F.3d at 190.

The employer's conduct must be such that "a reasonable employee would have found the challenged action[s] materially adverse," that is, sufficient to dissuade a reasonable employee from

engaging in protected activity. *Burlington Northern*, 548 U.S. at 68; *see also Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 327 (4th Cir. 2018). Unlike the adverse employment action necessary to sustain an employment discrimination claim, "[a]n adverse action need not affect the terms and conditions of employment" to sustain a retaliation claim. *Barnes v. Charles Cnty. Pub. Schools*, 747 Fed. App'x 115, 119 (4th Cir. 2018) (per curiam) (citing *Burlington Northern*, 548 U.S. at 64); *see also Strothers*, 895 F.3d 317, at 327 n.3. Even with this lower bar to relief, however, the challenged conduct must impose "some direct or indirect impact on an individual's employment as opposed to harms immaterially related to it." *Barnes*, 747 Fed. App'x at 119 (quoting *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 431 (4th Cir. 2015)).

A "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion" would all certainly constitute materially adverse actions. *Boone*, 178 F.3d at 255. But changing an employee's work station or work duties or imposing new duties that the employee finds "arbitrary," "time-consuming," or "irritating" is not a materially adverse action if the "new tasks 'are not dirtier, more arduous, less prestigious, ... objectively inferior, [or] possess[ing] [of] any analogous attribute.'" *Tawwaab v. Virginia Linen Serv., Inc.*, 729 F. Supp. 2d 757, 784 (D. Md. 2010) (quoting *Stephens v. Erickson*, 569 F.3d 779, 791 (7th Cir. 2009)). Conduct such as "failing to issue a performance appraisal . . . or issuing a personal improvement plan" or a verbal or written reprimand, without more, do not constitute materially adverse actions in a retaliation claim. *Wonasue v. Univ. of Md. Alumni Ass'n*, 984 F. Supp. 2d 480, 492 (D. Md. 2013) (internal citations omitted). However, in *Barnes*, a panel of the Fourth Circuit affirmed the district court's finding that the plaintiff's "receipt of a letter of warning did amount to an adverse action" where the plaintiff's supervisor "warned [plaintiff] that future disciplinary actions could result in further discipline, including termination." 747 F. App'x at 119.

23

To satisfy the causal connection element of a plausible retaliation claim, a plaintiff may allege facts to "suggest that the adverse action occurred because of the protected activity" or that "the adverse act bears sufficient temporal proximity to the protected activity." *Staggers v. Becerra*, Civ. No. ELH-21-0231, 2021 WL 5989212, at *22 (D. Md. Dec. 17, 2021) (citation omitted). As to the latter method of establishing a causal connection, a "lengthy time lapse between the [defendant's] becoming aware of the protected activity and the alleged adverse . . . action . . . negates any inference that a causal connection exists between the two." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005) (internal quotation marks and citation omitted).

In this case, Plaintiff filed a complaint with EEOC alleging discrimination on April 14, 2020. The filing of an EEOC complaint is an activity protected by Title VII and ADEA. *See, e.g.*, *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998); *King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003). The Amended Complaint alleges that the retaliation started in May 2020. ECF 18 at 3. There are several events that are alleged to have occurred around or after May 2020: Tanner-Hill's instruction to Jackson that he retaliate against Plaintiff after Tanner-Hill became aware of Plaintiff's EEOC complaint; a decision by Tanner-Hill and Jackson to demote Plaintiff; the First Warning Letter, dated May 27, 2020, reprimanding Plaintiff for unprofessional communications with Green; the Second Warning Letter, dated August 26, 2020, reprimanding Plaintiff for certain work performance failures and describing new work duties to be assigned to her; the subsequent assignment of administrative work duties one day per week, which Plaintiff claims was a demotion; and demeaning comments and jokes by Jackson and other co-workers at Plaintiff's expense about her new administrative duties.

Like the warning letter at issue in *Barnes*, the First Warning Letter here explicitly warned Plaintiff that further disciplinary actions could include termination: "This is a first and final written warning and additional violation of CESLC policies or standards will result in further disciplinary action, up to and including termination." ECF 18-1 at 9. Referencing the First Warning Letter, the Second Warning Letter was even more specific, noting that "CESLC [had] considered terminating [Plaintiff's] employment" due to various work performance failures but opted to issue "a final warning" that Plaintiff would be terminated if the performance issues continued. ECF 27-1 at 9. Thus, each of the two letters warned of terminating Plaintiff's employment, which may be considered materially adverse by a reasonable employee and, if causally connected to protected activity, could dissuade a reasonable employee from engaging in such activity.

The Second Warning Letter presented Plaintiff with two options for adjusting her job duties due to closure of the resident banking offices during the COVID-19 pandemic. According to the Amended Complaint, Plaintiff was ultimately assigned to perform certain clerical filing duties, which she considered the work of a file clerk, one day per week. ECF 18 at 4. Plaintiff alleges that Jackson and other CESLC employees made fun of her for being assigned filing tasks and that this conduct caused harms to her mental and physical health. *Id.* Drawing all reasonable inferences from Plaintiff's allegations in her favor, the change in Plaintiff's duties at work may have plausibly constituted a decrease in the prestige of her position as accountant or bookkeeper sufficient to dissuade a reasonable employee from engaging in protected activity, if causally connected to such activity.

As to the causal connection element of Plaintiff's retaliation claims, the Amended Complaint alleges that "Terri Tanner-Hill instructed Gregory Jackson . . . to retaliate on [Plaintiff] after she found out that [Plaintiff] filed a complaint with the EEOC office in April 2020." ECF 18

at 3. The First Warning Letter is signed by Jackson and dated May 27, 2020, 43 days after the EEOC complaint Plaintiff filed on April 14, 2020. In combination, Plaintiff's allegation regarding Tanner-Hill and Jackson, which the Court must accept as true at the motion-to-dismiss stage, and the timing of the First Warning Letter are sufficient to plead a causal connection between the EEOC complaint and the letter. Additionally, although issued approximately three months after the First Warning Letter, the Second Warning Letter makes reference to the prior letter and therefore appears on its face to be causally related to the prior letter. The Second Warning Letter also describes the subsequent change in Plaintiff's work duties and is therefore causally related to that adverse action, which Plaintiff alleges was done in retaliation for the EEOC complaint.

Construed liberally and with all factual allegations accepted as true and reasonable inferences drawn in Plaintiff's favor, the Amended Complaint suffices to state plausible claims of retaliation under Title VII and ADEA. Accordingly, Defendants' motion as to the retaliation claims will be denied.[6]

---

[6]    In her opposition, Plaintiff argues that she has asserted claims for hostile work environment. ECF 27 at 2. However, the Amended Complaint does not appear to state any such claim. Defendants' memoranda in support of their motion does not address any hostile work environment claim. To state a hostile work environment claim, a plaintiff must allege "(1) unwelcome conduct; (2) that is based on the plaintiff's [protected trait]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive environment; and (4) which is imputable to the employer." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Okoli*, 648 F.3d at 220) (internal quotation marks omitted); *see also Baqir v. Principi*, 434 F.3d 733, 745–46 (4th Cir. 2006) (considering hostile work environment claim under ADEA) (citing *Bass v. E.I. DuPont de Nemours* & Co., 324 F.3d 761, 764–65 (4th Cir. 2003)). Even if the Amended Complaint adequately alleged that Plaintiff suffered the conditions of a hostile work environment, the pleading has the same deficiency as the discrimination claims in that it fails to allege that the unwelcome conduct was based on Plaintiff's race or age. Therefore, the Amended Complaint has not plausibly alleged any actionable hostile work environment claim.

**IV.**      **Conclusion**

In summary, the Amended Complaint does not include sufficient factual allegations to support any claim of discrimination under Title VII or ADEA but adequately states claims of Title VII and ADEA retaliation. Therefore, Defendants' Motion to Dismiss will be granted in part and denied in part. The Court is mindful that Harris is a *pro se* litigant. Thus, the discrimination claims against CESLC will be dismissed without prejudice to a further amended pleading. All Title VII and ADEA claims against Tanner-Hill and Jackson will be dismissed with prejudice, for the reasons stated in Part III.B above.

A separate Order follows.


__September 30, 2022____                              _____/S/_____
Date                                                             Matthew J. Maddox
                                                                    United States Magistrate Judge

27